# Miller v. Rowan, Dean & Co.

### *Bill by Creditor to Set Aside Voluntary Conveyance.*

1. *Bill to Set Aside Voluntary Conveyance; Consideration; burden of proof on grantee.*—Where a bill is filed by a creditor of the grantor in a deed, to set aside the deed as voluntary and fraudulent, the burden of proving a valuable consideration is on the grantee.

2. *Same; evidence.*—The grantee is not limited to evidence of the precise or particular consideration expressed. Any kindred consideration,—any valuable as distinguished from a good consideration—may be proved.

3 *Same; sufficiency of evidence; how affected by laches of attacking creditor.*—The unexplained delay of a creditor for a long period of time, to attack a conveyance as voluntary and fraudulent, until death has removed a number of witnesses to the transaction adds to the weight and sufficiency of the evidence his adversary may then be able to produce as to the consideration and attendant circumstances of the conveyance sought to be vacated.

4. *Verbal Admissions; weight as evidence.*—Verbal admissions, unless deliberately made, and identified with reliable certainty, ought to be received with great caution.

5. *Unexplained retention of possession by vendor of land, after an absolute sale, not a badge of fraud.*—The rule that possession remaining

[Miller v. Rowan, Dean & Co.]

with a vendor, after an absolute sale, is, as to his existing creditors, a sign or badge of fraud, of which there must be an explanation, has never been applied to sales and conveyances of land.

APPEAL from Calhoun Chancery Court.

Heard before Hon. J. K. McSPADDEN.

The bill in this case was filed by Rowan, Dean & Co. against Lizzie A. Miller, in the chancery court of Calhoun county and sought to have set aside, as fraudulent and void against complainants, a deed to certain lands theretofore executed to defendant by her brother E. L. Vernon, on the ground that said deed was voluntary, and without a valuable consideration. The fact of the existence of Vernon's debt to complainants at the time of the execution of the deed is fully shown, but the defendant grantee is not shown to have had any knowledge thereof. The consideration expressed in the deed is two hundred dollars. The other facts sufficiently appear in the opinion. The chancellor rendered a decree in favor of complainants, and vacated the conveyance. The defendant appeals.

CALDWELL, JOHNSTON & ACKER, for appellant.

S. D. G. BROTHERS, contra.

BRICKELL, C. J.—The debt due the appelees from the grantor, to the payment of which it is sought to subject the lands, existing at and prior to the sale and the conveyance to the appellant, the burden of proving that the conveyance is supported by a valuable consideration rests on the appellant. The recital of the consideration in the conveyance, in this controversy, is deemed the mere declaration or admission of the grantor, which, however binding on him, cannot be employed as evidence to affect his existing creditors.—3 Brick. Dig. 520, §.173.

. The grantee is not, as seems to be supposed, limited to evidence of the precise or particular consideration expressed. Any kindred consideration—any valuable as distinguished from a good consideration—may be proved. The payment of money to the grantor; the payment of debts of the grantor to third persons; or the payment of debts, or the discharge of legal or equitable

liabilities to the grantee, may be commingled, forming the actual consideration, and when satisfactorily proved, will support the conveyance. *Hubbard v. Allen*, 59 Ala. 283 ; *Mobile Savings Bank v. McDonald*, 89 Ala. 434.

The negotiations terminating in the sale of the land to the appellant, were conducted by her and the grantor in the presence only of their mother. That the appellant is now the only witness by whom the sale which preceded the conveyance, its consideration, and the attendant circumstances can be shown, is a necessity not of her creation, nor attributable to her *laches*. It originates in the unexplained delay of the appellees, for more than thirteen years to assail the validity of the sale or of the succeeding conveyance, though during the entire period the remedy they are now pursuing, and other remedies, were open to them ; the death of the grantor and of the mother intervening. This unexplained delay is not without much of significance in support of the transaction. It is not matter of inference only, but of direct admission by the appellees, that they had knowledge of facts and circumstances, which would have put a creditor of ordinary care and vigilance on inquiry, and that inquiry would have led to a knowledge of the sale and of the succeeding conveyance, while all the facts were recent, and the witnesses from whom evidence of them was attainable were in life and accessible. Immediately on the sale the grantor yielded possession, leaving the State, declaring his purpose to take up his residence in another State. The appellees knew of his departure ; knew that he had ceased to be an occupant of the lands on which had been his home and residence for many preceding years, and that the appellant and her mother, who had been his co-tenants, were in the exclusive occupancy and possession of them. It is singular, if these facts did not excite the vigilance and provoke inquiry by the appellees. In a little more than three months after the departure of the grantor from the State, the conveyance now assailed is spread on the records of the proper court of probate, on its face describing the grantor as a resident of a particular county in the State of Texas which was the place of its execution. True, the appellees say they had no knowledge or information of the conveyance until some years later. The want of information or of knowledge

[Miller v. Rowan, Dean & Co.]

is a manifestation of their want of the ordinary care and diligence of creditors. Parties who are neglectful or indifferent to open, visible facts and circumstances, cannot account for or explain long delay, unreasonable quiescence, by professions of ignorance, which, if it exists, is the result of their own supineness. The weight and sufficiency of the evidence of the appellant as to the sale, its consideration, and its attendant circumstances, cannot be disconnected from these facts; they are of the ordinary tests for the ascertainment of truth, when they attend controversies of this character; the long unexplained delay of the creditor, his continued acquiescence, until death removes witnesses, whose evidence might be of injury to him, and of benefit to his adversary, must add force and significance to the evidence his adversary can produce.

We extract the evidence of the appellant as to the sale, its consideration, and attendant facts: "The deed referred to does not express its true consideration. The circumstances leading up to the purchase of my brother's interest in the farm, were substantially as follows: For at least three years in the early seventies, my brother had control of the farm, and my father, mother and myself were living in the town of Jacksonville. My brother collected and appropriated to his own use, nearly all the rents, incomes and profits of said farm during those years, and never accounted to me for my share in them. And during almost the whole of the year 1878, he was talking about selling his interest in the farm, with the view of going to Texas. In the latter part of the year 1878, he told me he had decided to sell his interest in the farm, and if I did not purchase it, he would have to sell to some one else, and that he was going to leave immediately for Texas and never intended to put his foot on Alabama soil again. Then he and I tried to agree on the price I was to pay for his interest, but we could not come to any definite conclusion or understanding. We finally, however, agreed to submit the matter to our mother, and she decided that in consideration of his having used my part of the rents of the place, and as she had allowed him to draw several hundred dollars in excess of what I had drawn, at one time, besides other sums of money he had drawn at different times; that it would be just for me to pay off a balance due by him to Ledbetter & Co.

of Weaver's Station, of about two hundred and fifty dollars ($250.00), for which he gave a mortgage, and then pay to him in cash, two hundred dollars, making in all between seventeen hundred and two thousand dollars I would be paying for his interest in the land. The cash paid him, two hundred dollars, together with the other amounts justly owing to me, was considered by my mother as a fair price and consideration for his said interest in the said Vernon farm. And to this we both agreed, and I paid him the two hundred dollars. He was in such haste to go off to Texas, that he did not execute the deed while here, but promised to make the deed and send it to me as soon as he located out there. And in January of the next year, 1879, he sent me the deed by registered mail."

If the sale and conveyance had been assailed by the appellees in a reasonable time after the notice of them, or of the facts putting them on inquiry, which if pursued would have led to notice; or while the mother and the grantor were in life, it may be, fuller, more definite proof of the liability of the grantor to the appellant, which formed, it seems, the greater part of the actual consideration, would have been exacted. Certainly it would have been exacted, if the appellant had known, or had notice of facts putting her on inquiry, that the grantor was involved in debt. But from whom can this fuller and more definite proof be now obtained? Who can now itemize, or approximate more nearly than the appellant the amount of the moneys belonging to her, and the grantor had appropriated? The grantor who appropriated, the mother consenting to the appropriation, are dead; and it was not until their deaths, the appellees were quickened into a contestation of the sale and conveyance. The lapse of time, the death of witnesses, the unexplained *laches* of the appellees, if there be a want of fullness and definiteness of the proof of the consideration, must now supply it.

What would have been the effect of the payment of the cash consideration, if the appellant had known the grantor was involved in debt, or had information which ought to have put her on inquiry as to the existence of the fact, it is needless to consider. There is a want of all evidence that she had knowledge or reason to believe that he was indebted otherwise than to herself, except the

debt to Ledbetter & Co., which she assumed to pay and
paid. She knew that he had, in the past, dealings with
the appellees, but this could not lead her to believe, that
there was a debt to them, past due for near two years,
or put her on the inquiry as to the existence of such debt.
If there had been continuous, or intervening dealings
with the appellees, of which she had knowledge, or in-
formation, a different question would have been pre-
sented.

The grantor after remaining in Texas about one year,
returned to Alabama. There is much of evidence, con-
sisting principally of his verbal declarations, which, if
made, were unknown to the appellant, introduced for
the purpose of showing that while in the occupancy of
the lands, or a part of them, he claimed to hold in his
own right, and of his exercise of acts of ownership.
Whether these declarations were admissible, is not now
matter of consideration, for they appear to have been re-
ceived without objection. The failure to object to their
introduction, cannot add to their force and effect as evi-
dence, and that is now the only matter of just consid-r-
ation. They are of a species of evidence which, it is
observed by Mr. Greenleaf, and the observation has been
of frequent repetition, ought to be *received with great
caution.* And he adds : "The evidence, consisting as it
does in the mere repitition of oral statements, is subject
to much imperfection and mistake; the party himself
either being misinformed, or not having clearly expressed
his own meaning, or the witness having misunderstood
him. It frequently happens, also, that the witness, by
unintentionally altering a few of the expressions really
used, gives an effect to the statement completely at vari-
ance with what the party actually did say."—1 Green.
Ev., § 200 ; *Garrett v. Garrett,* 29 Ala. 439 ; *Wittick v.
Keiffer,* 31 Ala. 199. The facility with which such evi-
dence may be fabricated, and the difficulty, if not impos-
sibility, of disproving it, when the party to whom the
declarations are imputed is dead, or incapable of testi-
fying, necessarily leads the judicial trier of facts to a dis-
trust of their reliability. But, as is said by Mr. Green-
leaf, when such declarations are admissible, and are
shown to have been deliberately made, and when they
are precisely identified, they may become evidence of the
most satisfactory nature.

These declarations purport to have been made at different periods, of from thirteen or fourteen years, to not less than four or five years, prior to the examination of the witnesses testifying to them. Obviously, they were parts of casual or accidental conversations, in which deliberateness of expression could not be expected. There is no fact stated by more than two or three of the witnesses, which has a tendency to show any reason or cause for the declarations impressing or continuing in the memory. Without corroboratory facts or circumstances, they are entitled to but little of consideration in determining the *bona fides* of a transaction so long undisturbed, the party to whom they are imputed not being in life, having the opportunity to explain or disprove them.

The rule that possession remaining with a vendor, after an absolute sale, is, as to his existing creditors a sign or badge of fraud, of which there must be explanation, has never been applied to sales and conveyances of lands. —Bump on Fraud, Con. 121; *Noble v. Coleman*, 16 Ala. 77; *Paulling v. Sturgus*, 3 Stew. 96; *Tompkins v. Nichols*, 53 Ala. 197. As is shown by the authorities cited in *Noble v. Coleman supra*, a long continued possession, unexplained, may become evidence of fraud. Here, there was no retention of possession by the vendor. Concurrently with the sale, he yielded possession, and the possession of the vendee and her co-tenant became exclusive. The subsequent occupancy by the vendor, as matter of law would not be deemed in hostility, but would be referred to the title. Independent of this consideration, it is shown, that this occupancy was permissive, that of a tenant paying rent.

If the demand of the appellees be not stale in the contemplation of a court of equity, nor barred by the statute of limitations, questions in regard to which we do not deem it necessary to express an opinion, our conclusion is, that the evidence does not justify the vacation of the sale and conveyance as fraudulent.

Let the decree of the chancery court be reversed, and a decree rendered dismissing the bill at the costs of the appellees in the court of chancery and in this court.