(135 So. 435)

## COOKE v. WILBANKS.
### 7 Div. 964.

Supreme Court of Alabama.
May 14, 1931.

Rehearing Denied June 25, 1931.

M. M. Smith and W. T. Starnes, both of Pell City, W. C. Davis, of Jasper, and Victor Smith and R. B. Evins, both of Birmingham, for appellant.

hands of defendant L. Cooke, be held subject to the payment of complainant's judgment; that if there are not sufficient moneys so impressed and available, that the purchase money notes of the Leeds Cooperage Company be condemned and ordered sold, and the proceeds applied to balance due on complainant's judgment.

It is further prayed in the bill that it be decreed that defendant L. Cooke, received from defendant W. P. Cooke, moneys and properties of an amount sufficient to pay complainant's said judgment, and that it was received with the knowledge, or facts amounting to notice, at the time of the transfer and receipt thereof, of the fraudulent intent on the part of W. P. Cooke to hinder, delay, and defraud complainant as one of the creditors; and that said L. Cooke has conveyed said property and appropriated the proceeds thereof to his own use, and that judgment should be rendered against said respondent for the amount of complainant's judgment, interest, and costs against W. P. Cooke.

Frank B. Embry, of Pell City, and Thos. J. Judge and Morton Nesmith, both of Birmingham, for appellee.

Process was served on the latter, an averred nonresident of this state, by publication, and there was a decree pro confesso against W. P. Cooke; L. Cooke answered the bill and denied the material allegations thereof relating to the transfer of any property by W. P. Cooke to him; and the answer to the bill and interrogatories was in detail, and as to the title to the several properties in issue and the several judgment claims, including that of Fenner & Beane. That case is reported as 214 Ala. 558, 108 So. 370.

It will not be necessary to recite the voluminous pleadings or evidence. Much of the evidence was given ore tenus before the court rendering the decree, and his action and finding are supported by the usual presumptions. Cooke v. Fenner & Beane, 214 Ala. 558, 108 So. 370; Andrews v. Grey, 199 Ala. 152, 74 So. 62; Hodge v. Joy, 207 Ala. 198, 92 So. 171; McClurkin v. McClurkin, 206 Ala. 513, 90 So. 917; Manchuria S. S. Co. v. Harry G. G. Donald & Co., 200 Ala. 638, 77 So. 12; Gray v. Handy, 204 Ala. 559, 86 So. 548.

The trial court properly allowed the testimony of Mr. Alford of statements made at the Morris Hotel by W. P. Cooke in the presence of L. Cooke, as to their relations in the properties in question; the same was the basis of the reasonable inference of a common design of the two defendants, the father and son, the transferor and transferee, to fraudulently convey and secrete the properties of the son and place the same beyond the reach of creditors that may have the lawful right to subject same to the payment of debts and legal obligations. Declarations of the latter during the pendency of that common and fraudulent design and within its scope and purpose of the fraud and collusion are competent; and it is immaterial whether such

THOMAS, J.

The bill by judgment creditor for discovery, attaches interrogatories and prays that the moneys and properties of W. P. Cooke, in the

declarations were made before or after such fraudulent transfer or conveyance, if made after the collusion and until the common design is accomplished or abandoned. Borland v. Mayo, 8 Ala. 104; Mahone v. Williams, 39 Ala. 202; Jones v. Norris, 2 Ala. 526; National Park Bank v. L. & N. R. R. Co., 199 Ala. 192, 74 So. 69; 2 Jones on Ev. § 943, p. 1740; 22 C. J. 366, § 438. There was no error in admitting Alford's testimony; it is shown that Mr. Alford did not testify in the case of Fenner & Beane, cited above. There was no error in the admission of answer of W. P. Cooke to interrogatories in the case of Fenner & Beane; it was the same matter and common design to fraudulently affect creditors in the collection of debts. There was an identity of interests, as each defendant was a party to the transaction. May v. Barnard, 20 Ala. 200.

A general statement of the relationship of the parties, that of their several business ventures or enterprises, is contained in the decision reported as 214 Ala. 558, 108 So. 370.

The rules as to a general creditor's (existing or subsequent) bill, as to setting aside fraudulent conveyances, are well understood and need not be recounted. McCrory v. Donald, 192 Ala. 312, 68 So. 306; Cooke v. Fenner & Beane, 214 Ala. 558, 108 So. 370; Breeding v. Ransom, 220 Ala. 82, 123 So. 899; Manchuria S. S. Co. v. Harry G. G. Donald & Co., supra; Hanvey v. Formby Co., 200 Ala. 696, 75 So. 1003; Watters-Tonge Lbr. Co. v. Knox, 206 Ala. 183, 89 So. 497; Allen v. Overton, 208 Ala. 504, 94 So. 477; H. B. Claflin Co. v. Muscogee Mfg. Co., 127 Ala. 376, 30 So. 555.

The trial court has correctly found:

"* * * that when said cause of action accrued the respondent W. P. Cooke was a man of substantial means, that thereafter said W. P. Cooke transferred practically all of his property to his father the respondent LaFayette Cooke with intent to delay, hinder or defraud his creditors, and that the said LaFayette Cooke received such property with knowledge of and participated and shared in such fraudulent intent, and that the property so conveyed was of more than sufficient value to pay the amount of Complainant's said judgment, exclusive of all exemptions allowed by law to the said W. P. Cooke.

"The Court further finds that the respondent LaFayette Cooke after receipt of such property, sold and conveyed the same to third person, thus placing the same beyond the reach of legal process for the satisfaction of complainant's said judgment and that he has converted the proceeds from said sale to his own use and benefit, which in equity and good conscience should be applied in payment and satisfaction of complainant's said judgment.

"The Court further finds that by such transactions the respondents were guilty of actual fraud in the covering up and disposal of W. P. Cooke property in anticipation of a liability being fastened on him because of the trouble with complainant.

"The Court further finds that the respondents have not submitted that clear, full, satisfactory evidence sufficient to overcome the indicia of fraud growing out of the relation of father and son, their intimate business relations, their common knowledge of the condition growing out of the shooting, and disposition of all holdings, joint and several, in rapid succession and the fact that LaFayette Cooke at the commencement of the suit, had money or effects in his hands, which equitably belongs to W. P. Cooke and were subject to the payment of his debt."

That is to say, that the proceeds of sales by respondent L. Cooke, to third parties became equitable assets of the debtor son, W. P. Cooke, in the hands of the father, L. Cooke. The cause of consummation of the ostensible business relations in several different properties and enterprises is shown by the record in this case and the reported case in this court, as we have indicated. Cooke v. Fenner & Beane, 214 Ala. 558, 108 So. 370.

The answer of W. P. Cooke to the original bill in the Fenner & Beane Case was relevant and proper, and covered the same matter as here, as to admitted assets at the time in question, the disposition thereof shown by this evidence, and the circumstances of the several transactions and disposition of the W. P. Cooke properties, the relations of the two defendants in business, and the contradictions and explanations of defendant L. Cooke, tended with complainant's evidence to justify and warrant the finding of vitiating fraud that existed as to the transfer of properties and defeat of the existing creditors of W. P. Cooke.

Mr. Mize testified that the moneys which defendant L. Cooke received from the Leeds Cooperage Company were transferred and taken over from the company's account to the LaFayette Cooke trust fund; that this account was kept in the middle of the bank book under the "L's," on which account there was confusion or erasure of the date. Mr. L. Cooke, as a witness, gave an account of this and other transactions; statements that were not satisfactory or consistent with his and W. P. Cooke's former answers or depositions. Mr. Mize also tells that immediately after the trouble of W. P. Cooke with Dr. Wilbanks, the defendant L. Cooke took charge of the affairs of W. P. Cooke, with the Bank, the Leeds Cooperage Company, St. Clair Cooperage Company, and the Odenville Heading Plant; W. P. Cooke drew drafts, after the former's trouble, that were paid by L. Cooke, and that there were drafts which were declined of payment. L. Cooke explains that he paid drafts of the son to care for his per-

sonal needs and speculations, but did not satisfactorily explain that all properties of the son coming to the father were so expended. So, also, the explanations of L. Cooke as to his former statement of the facts and relations of the parties, his answer in the case of Fenner & Beane are not satisfactory. The matter was important, and, being prepared for defense and of matters peculiarly within the personal knowledge of defendants, may not be lightly set aside and explained as now attempted in the last trial and here.

It is shown by the evidence that W. P. Cooke had one-third interest in the Heading Mill at Odenville, conducted its active operation and management before his trouble with Dr. Wilbanks; that L. Cooke said he intended to give him a third or account to him for $8,333 for his third; that the son owned an interest from Culverhouse of $7,000 in the Leeds Cooperage Company, which L. Cooke says that only $4,050 was credited for the said $7,000 interest therein; or such was the credit entry thereof, says L. Cooke, by reason of entry or credit of payment of W. P. Cooke's cotton speculation draft. This explanation of discrepancy as to the W. P. Cooke interest in the Culverhouse purchase is most unsatisfactory. The record shows, without question, that L. Cooke admitted that $8,000 belonging to W. P. Cooke, from the Leeds sale or business, were left in L. Cooke's possession or account.

 The conclusion of Mr. Justice Bouldin in the Fenner & Beane Case, holding W. P. Cooke the owner in equity of one-third interest in the Odenville Heading Mill, and the St. Clair Cooperage Company, is well founded when the whole evidence is considered. And if there is difference in the two cases, the instant case is stronger that both respondents were guilty of actual fraud in disposition and covering of proceeds of sale of W. P. Cooke's property in anticipation and defeat of liability because of the personal and wilful shooting of complainant. Such were the conclusions of the trial court within the rule and latitude of the proof of fraud. Jackson v. Roanoke Banking Co., 197 Ala. 349, 72 So. 530; Hall v. Santangelo, 178 Ala. 447, 452, 60 So. 168; Nelms v. Steiner Bros., 113 Ala. 562, 22 So. 435; Snodgrass v. Branch Bank at Decatur, 25 Ala. 174, 60 Am. Dec. 505. And circumstantial evidence is clearly admissible as fraud is very seldom susceptible or difficult of direct proof. Riddle v. Batson, 16 Ala. App. 566, 80 So. 140, and authorities; Mann v. Darden, 171 Ala. 146, 54 So. 504; Lester v. Mahan, 25 Ala. 445, 60 Am. Dec. 530.

The relationship of the alleged fraudulent grantor and grantee is not in itself sufficient to stamp the transactions as fraudulent (Morrow v. Campbell, 118 Ala. 330, 24 So. 852; Teague, Barnett & Co. v. Lindsey, 106

Ala. 266, 17 So. 538), when this fact is taken with all the circumstances, as the sudden disposition of all admitted properties and assets of the son, the intimate business relations of the parties, the several answers and explanations of disposition of assets, the manner in which the trust fund account was kept and the explanations thereof, the failure to account or produce the drafts upon which a portion of the assets are said to have been applied, the declarations of the parties to each other in the presence of third parties, which call for clear, satisfactory, and convincing proof on defendant's part to dispel the natural inferences or indicia of fraud that are apparent to an impartial mind after the whole evidence is considered.

 Fraud is never presumed, and the burden in such case is upon him who challenges conveyances on such ground. Allen v. Overton, 208 Ala. 504, 94 So. 477. When the whole evidence is considered, complainant has discharged the measure of proof as to this.

When the evidence is considered, there is no good reason or laches precluding complainant from relief. Each case stands upon its own peculiar and determining facts. Rives v. Morris, 108 Ala. 527, 18 So. 743; Miller v. Rowan, Dean & Co.. 108 Ala. 98, 19 So. 9. The father had the benefit of the pleading and evidence in the Fenner & Beane Case involving the same properties and transactions. This case may have been affirmed on the very pertinent observation and decision in the case of Fenner & Beane, supra.

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and BOULDIN, JJ., concur.