ALMON, Justice.
This appeal comes to us from a summary judgment in favor of defendant realtors on a claim for breach of fiduciary duty. We reverse and remand.
Alonzo Beard died intestate on January 31,1977, possessed of fee simple title to two parcels of land in Mobile County. He was survived by his widow, Idree Beard, seven children, and two grandchildren by a deceased child. In April of 1977 Mrs. Beard contracted with Leonard C. Wyatt of Little Realty Company for him to act as her agent in selling one of these parcels, referred to as the Trinity Gardens lot. The other parcel comprises forty acres in Moffattsville, Alabama.
Mr. Wyatt asked Mrs. Beard if she and the children would be interested in selling the Moffattsville property. She replied that they would not because the family had lived there and one of her sons intended to move back when he retired. Nevertheless, while obtaining the signatures of the two grandchildren on the deed conveying the Trinity Gardens lot, Mr. Wyatt bought their fractional interests in the Moffattsville property for $1500 each. He immediately offered to sell these interests to Mrs. Beard and her children for $5,000.
Mrs. Beard and six of the children filed this action, seeking $50,000 compensatory and punitive damages[1] for breach of fiduciary duty. Defendants answered and later moved for summary judgment, which the court granted. The Beards [2] appealed.
The evidence of record is contained in depositions of Mrs. Beard and Mr. Wyatt and an affidavit of Mrs. Beard’s attorney. Mr. Wyatt admits that he bought the grandchildren’s interest without first telling Mrs. Beard. He claims to have told Mrs. Beard that the grandchildren wanted to sell their interest, but she denies this.
Wyatt contends on appeal that he was an agent for the Beards only with respect to the sale of the Trinity Gardens lot and so owed no duty to the Beards with respect to the Moffattsville parcel. He relies on the rule that “[a]n agent employed for a specific purpose is a special agent and the fiduciary relationship of principal and agent applies only to the acts within the agreement.” Caldwell v. Caffey, 269 Ala. 543, 546, 114 So.2d 560 (1959). See also, Gurley v. Bank of Huntsville, 349 So.2d 43 (Ala.1977); Gilmore Industries, Inc. v. Ridge Instrument Company, 288 Ala. 127, 258 So.2d 55 (1972). Wyatt thus argues that he committed no actionable wrong by purchasing the grandchildren’s interests in the Mof-fattsville property and offering to sell to Mrs. Beard and her children at a substantial profit.
The Beards contend that Wyatt’s actions constitute a breach of fiduciary duty and are thus actionable. We agree. The cases decided by this Court on self-dealing by an agent and acquisition of an interest adverse to the principal have been limited to property which is the subject of the agency. See, e.g., Lauderdale v. Peace Baptist Church, 246 Ala. 178, 19 So.2d 538 (1944). We have found no controlling case directly on point, but the Beards have cited two cases involving similar fact situations.
The first is Nye v. Lovelace, 228 F.2d 599 (5th Cir. 1956), a case arising out of a transaction in Alabama property. Lovelace, as agent for Nye, had bought substantial mineral acreage for his principal and simultaneously bought adjoining acreage *1009 for himself. When Nye sued to recover the adjoining tract, the District Court for the Southern District of Alabama granted judgment for Lovelace. The Fifth Circuit reversed and rendered judgment for Nye:
“Here, an unfaithful servant, whose activities from the inception were in breach of his heavy duties, undertook, with circumstances strongly suggesting a studied furtiveness, to capitalize upon the information which had come to him under an obligation of trust, and in doing so, he sought to make decisions and resolve questions for his principal in which he stood to gain or lose as self-interest prevailed or was submerged. That which he has obtained by these means, he must restore.”
Id., at 603 (footnote omitted).
The second ease cited by the Beards is Chalupiak v. Stahlman, 368 Pa. 83, 81 A.2d 577 (1951). Chalupiak bought a 50-acre tract of land, had a survey and plan drawn up, and subdivided the property. Stahlman, a justice of the peace and tax collector, discovered while helping Chalupiak prepare deeds to subdivision lots that Chalupiak mistakenly claimed an extra 30 acres. Stahlman bought these 30 acres at a tax sale. The trial court held that Stahlman had breached no duty to Chalupiak, but the Supreme Court of Pennsylvania reversed:
“Defendant secured during the course of his service to plaintiff, the knowledge that plaintiff was attempting to convey land which plaintiff did not own. It was this knowledge that defendant utilized against the interests of plaintiff. Defendant, on the basis of this knowledge, went to a commissioners’ sale and purchased the land which he knew or suspected that plaintiff mistakenly thought he had already validly conveyed to others. It is manifest that had plaintiff never dealt with defendant the latter would never have been led to purchase the land in question. Defendant was no chance purchaser. True, defendant expressed doubt to plaintiff concerning the validity of his title and also told plaintiff that the property had been exposed for sale by the commissioners. What defendant failed or omitted to inform plaintiff was that defendant intended to bid at the sale in his own behalf and later to inform him that he had actually purchased the land. It is to be particularly observed that the purchase by defendant, either for himself, as agent for his sister who lived in Asheville, North Carolina, or for himself and his sister, was not a purchase by a bona fide buyer but was for the sole purpose of requiring the plaintiff or his grantees to purchase defendant’s interests at a price. Before defendant bought the real estate he was fully aware that some of plaintiff’s grantees had made valuable improvements upon the land and others had commenced building thereon. It is a transparent attempt by defendant to profit through knowledge obtained from one who had employed him, either as agent, scrivener, conveyancer or combinations thereof.”
Id., 81 A.2d at 580-581 (emphasis omitted).
The Pennsylvania court noted that Chal-upiak was unlettered, while Stahlman was a man of some education. The same appears to be the case here, with the 78-year-old Mrs. Beard being victimized by Wyatt’s attempt to profit by his knowledge that he could force a sale for division if she did not purchase his interest in the land which he knew she wanted to keep intact.
Wyatt says that the agency relationship was terminated when he bought his interest because he had already obtained the grandchildren’s signatures to the Trinity Gardens deed before he bought their interest in the Moffattsville property. While we acknowledge that an agent may in certain circumstances compete with his principal after termination of the agency, Gilmore Industries, Inc. v. Ridge Instrument Company, 288 Ala. 127, 258 So.2d 55 (1972), such is not the case here. Whether the agency was terminated is a factual question, and so summary judgment is inappropriate; furthermore, there is evidence that Wyatt dealt unfaithfully with Mrs. Beard during the course of his negotiations with the grandchildren and by not informing her of their desire to sell their interest in the Moffattsville property.
*1010 Therefore, we find there is at least some question whether Wyatt has breached his fiduciary duty to the Beards, and so the trial court erred in granting summary judgment. The judgment is due to be reversed and the cause remanded.
REVERSED AND REMANDED.
TORBERT, C. J., and JONES, EMBRY and ADAMS, JJ., concur.

. The complaint also refers to defendants’ conduct in regard to a third piece of property not the subject of this appeal.

. While not all plaintiffs-appellants are named “Beard,” for convenience we refer to them by that name.