258 So.2d 55

**GILMORE INDUSTRIES, INC.,**
a Corporation,

v.

**RIDGE INSTRUMENT COMPANY,**
a Corporation.

8 Div. 421.

Supreme Court of Alabama.

Jan. 20, 1972.

Smith & Huckaby, P. A., Huntsville, for appellant.

Humphrey, Lutz & Smith, Huntsville, for appellee.

HARWOOD, Justice.

Ridge Instrument Company, hereinafter referred to as Ridge, filed a two count complaint against Gilmore Industries, Inc., seeking to recover the amounts Ridge claimed to be due it as commissions earned as sales agent for Gilmore.

Count 1 was in code form and claimed $37,082.82 due and owing under an account stated. A verified copy of the account stated was made a part of this count.

Count 2 claimed $37,082.82 as damages for breach of an agreement entered into between the parties on 10 March 1964, which agreement was subsequently amended as to territorial boundaries, by which Ridge was to serve as Gilmore's exclusive sales agent within the geographical limits described in the agreement and its amendments.

The count avers that on 11 January 1965, the sales agreement was amended, and this amendment was made a part of the count. In parts pertinent to this review this amendment reads:

"VI. *Termination*—Termination of this agreement can be made at any time by either party effective on mailing of written notice. Fees or commissions on all outstanding quotations on record prior to notice of termination will be honored for a period of sixty (60) days after date of termination.

"VI. *Literature*—Gilmore Industries will furnish all literature support as reasonably requested. All literature, price schedules, selling aids, etc. will remain the property of Gilmore Industries, Inc. and will be treated as company confidential."

The count sets forth some eight orders on which commissions in varying amounts were due and unpaid, and one bid dated 19 September 1965 on which the commission would be $7,488.69.

The count further avers that the plaintiff has complied with the agreement on its part, but the defendant has refused to pay the commissions on the eight orders and one bid specified in the count.

Interest on the amount of each commission is claimed from its respective due date.

The count further avers that on 24 September 1965, the sales agreement was canceled by Gilmore by letter of that date. A copy of this letter was made a part of the count, and in parts pertinent to this review reads:

"Effective this date, the sales agreement with your company is terminated in accordance with the provision of Paragraph VI of the agreement. You will be credited with and commissions paid on any outstanding quotation of record for which orders are placed within sixty (60) days from this date.

"We would like to continue to work together on the installation contract on S.O. 2161 and if agreeable to you, will expect your assistance on this project. Your fee will be in accordance with the existing schedule or as negotiated at time of award.

"Very truly yours,

"GILMORE INDUSTRIES, INC.

"D. T. Stone
Southwest Regional Manager"

Demurrers to the complaint being overruled, the defendant filed several pleas. Pleas 1 and 2 were pleas of the general issue. Plea 7 was a plea of confession and avoidance, and Pleas 8, 9, and 10 were pleas of recoupment.

Plea 7 (confession and avoidance) admitted the allegations of the complaint, but as grounds of avoidance set up that before the termination of the sales agreement the plaintiff (Ridge) acted in bad faith toward the defendant in that the plaintiff as defendant's agent possessed confidential information regarding the defendant's price

sheets, pricing policies, product line, schematics, diagrams, parts lists, and special requirements of defendant's customer, the National Aeronautics Space Administration (NASA) and by use of such confidential information the plaintiff submitted bids and quotes to NASA at prices slightly below defendant's bids and thereby secured orders for itself to defendant's damage. The plea further alleges that such confidential information was used by the plaintiff in submitting bids from 1 September 1965 through 20 May 1966.

Pleas 8, 9, and 10 (recoupment) aver that the plaintiff acted in bad faith before the termination of the agency by wrongfully using the confidential information it had acquired as agent of Gilmore (the same confidential information as alleged in Count 7) in submitting bids to NASA in competition with the defendant, and at slightly lower prices than the bids of the defendant.

Each plea sets up a particular bid made by the plaintiff in competition with the defendant. Plea 8 specifies a bid made on 23 November 1965, Plea 9 a bid made on 3 February 1966, and Plea 10 a bid made on 20 May 1966.

Each plea asserts that the defendant was caused to lose profits by the plaintiff's wrongful actions, and claimed different amounts of damages under each plea.

The plaintiff filed a general traverse to each of defendant's special pleas, and issue was joined.

After a lengthy trial, the jury returned a verdict in favor of the plaintiff and assessed damages at $44,268.81. Judgment was entered pursuant to the verdict.

Gilmore thereafter perfected this appeal.

The only points raised on this appeal relate to alleged deficiencies in the court's oral instructions, and to certain written charges given at the request of the plaintiff, and to certain other written charges

requested by the defendant and refused by the court.

At the conclusion of the court's oral instructions, counsel for Gilmore stated that he excepted to the oral charge given by the court, and as ground for his exception, counsel enumerated some five matters or legal principles upon which, counsel asserted, the court had omitted to instruct the jury.

Assignments 5, 6, and 7 claim error because of the failure of the court to charge respectively as to three of these asserted omissions.

■ If a party believes a court's oral instructions to be inadequate because of failure to sufficiently cover the legal principles he thinks applicable, he should request appropriate explanatory charges remedying such defect. In the absence of such requests, and none were made in this case, no ground for a reversal is presented. Beavers v. Southern Ry. Co., 212 Ala. 600, 103 So. 887; Scroggins v. Alabama Gas Corp., 275 Ala. 650, 158 So.2d 90; Revel v. Prince, 37 Ala.App. 457, 69 So.2d 470.

No merit therefore attaches to assignments of error 5, 6, and 7.

Appellant's assignment of error No. 11 asserts as error the court's action in giving the following charge (No. 12) requested in writing by the plaintiff:

"I charge you that, unless the defendant reasonably satisfies you from the evidence that the plaintiff acted in bad faith prior to the date of termination of the agency agreement by the defendant, then you cannot find the issues in favor of the defendant under its pleas Nos. 7, 8, 9 and 10."

■ Count 2 of the complaint avers that the plaintiff had complied with the terms of the sales agreement. In Plea 7 the defendant confessed this averment. Pleas 8, 9, and 10 aver that the plaintiff submitted three bids to NASA in competition with the defendant, the first being on 23 November

1965. The sales agreement was canceled by the defendant on 25 September 1965. The evidence is in uniform accord with these averments. Both D. T. Stone, the author of the cancellation letter, and Richard Carleton, the President of Gilmore testified that the agreement between Ridge and Gilmore was terminated as of 25 September 1965.

Counsel for defendant argues:

"But the agency relationship was not terminated instantaneously. The jury could believe the sales agency agreement was terminated on September 25, 1965, and still find that the agency relationship between the parties was not terminated until after that date."

The entire agency arose out of the sales agency agreement, and cancellation of the agreement canceled the agency. Counsel for defendant contends that because of the provision in defendant's letter canceling the sales agreement, requesting the plaintiff to continue work on the installation contract, the general agency was thereby continued. The clear language of the letter is otherwise. The general sales agency was canceled as of 24 September 1965, though a special and limited agency to continue assistance on the installation contract was offered.

Under the pleading and evidence the charge was therefore not misleading, and even if it had been, no explanatory charge was requested. No reversible error arises from assignment of error No. 11.

Assignment of error 14 relates to given charge No. 16 requested by the plaintiff.

This charge reads:

"I charge you ladies and gentlemen of the jury, that there was nothing confidential in the relationship between the plaintiff, Ridge Instrument Company, and the defendant, Gilmore Industries, Inc."

Ridge was clearly the exclusive sales agent for Gilmore until Gilmore canceled the sales agency on 24 September 1965.

Confidential and fiduciary relations are in law ordinarily synonymous. Stevens v. Marco, 147 Cal.App.2d 357, 305 P.2d 669; Fipps v. Stidham, 174 Okl. 473, 50 P.2d 680. Our decisions have stated that the relationship of principal and agent is one demanding trust and confidence. Lauderdale v. Peace Baptist Church of Birmingham, 246 Ala. 178, 19 So.2d 538.

Plaintiff's charge No. 16 therefore was erroneous and should not have been either requested or given. We do not see, however, that the defendant could have probably been injured in any substantial right in this instance for the reasons hereinafter set forth.

There is not a scintilla of evidence that Ridge competed with Gilmore during the period of the agency. The complaint avers that Ridge had complied with the agency agreement. The defendant's plea 7 (confession and avoidance) admits this averment. This would seem to foreclose any inference or contention that Ridge had been unfaithful to its agency prior to the termination thereof.

Counsel for Gilmore argues, however, that Ridge had been furnished confidential information by Gilmore, and since this information was designated "company confidential" in the sales agreement, the question of continuance of the agency beyond the date of termination should have been left to the jury.

In this regard the President of Ridge testified that the literature furnished Ridge by Gilmore was done with instructions from Gilmore to give such literature to prospective customers, and this was done; that upon termination of the agency all such literature was promptly returned to Gilmore. This testimony was not contradicted by any of Gilmore's witnesses.

This is not a case where a fiduciary had abstracted or copied confidential materials from his principal's files and later used such materials for his own benefit nor is it a case where the fiduciary was guilty of self-

serving bad faith during the term of the agency. The agency was terminated by Gilmore, apparently to Ridge's discomfiture and loss.

In James A. Head & Co. v. Rolling, 265 Ala. 328, 90 So.2d 828, this court quoted the following from Scottish Union and National Ins. Co. v. Dangaix, 103 Ala. 388, 15 So. 956, as being "a very good statement" of the legal principles enunciated:

" * * * We have been unable to find any decided case, or to find the principle asserted in any text-book on agency, which lays down the proposition, that one who has acted as an agent of another, whose agency has terminated, may not, thereafter, if he act in good faith and without fraud, engage in business in competition with, and even to the injury of his former principal. The law has not attempted to prescribe rules for the conduct of one who leaves the service of his first employer and enters that of another.

\* \* \* \* \* \*

" * * * If he should cease to represent one company, and engage to represent another, to the great disadvantage of the first, there is no law to prevent his doing so. Every one who employs an agent does so with the certain knowledge that his agency may terminate at any time, except in so far as it is restrained by contract, and that the agent may transfer himself, with all his information, skill and patronage, to another rival in business, or set up on his own account, in a competing line. Such persons are hired, often, in consideration of the trade that follows them, and this is legitimate, to the extent that it is fairly influenced."

■ Simply because an agent has seen confidential data during the term of an agency does not mean that after termination of the agency the agent is precluded from competing with his former principal, even though confidential knowledge gained during the agency may be of use in forwarding the competitive position of the agent. As to what information an agent may use after termination of the agency, one writer after reviewing the authorities has stated:

"This test has been roughly summarized by saying that the fiduciary can carry with him any confidential information which he can remember but may take nothing that has been written down." (See Dark, Termination of the Fiduciary Duty of Business Associates not to Compete, etc., 4 Duke Bar Journal 16 et seq.)

The matters raised by the defendant's pleas would avoid the defendant's liability for commissions, or recoup damages, because of alleged wrongful conduct of the plaintiff as an agent. Our examination of the record fails to reveal a scintilla of evidence tending to show bad faith on Ridge's part, either during the period of its agency, or after its termination when Ridge was free to compete with Gilmore.

Therefore, while plaintiff's requested charge 16 should not have been given, we are unwilling to reverse this judgment on this account, being of the conclusion that the defendant was not probably injured in any substantial right in light of the pleading and the undisputed evidence. Sup.Ct. Rule 45.

Assignment of error No. 16 asserts error because the court gave the following charge at the request of the plaintiff (Charge 21):

"I charge you that, if you believe that Gilmore terminated the sales agency agreement on September 24, 1965, and, further, if you believe that Ridge had acted in good faith up until that time, then Ridge was free to bid against Gilmore on NASA contracts after that date."

Charge 21 is ineptly drawn in that it is posited on "belief" by the jury. The correct predicate for a charge in a civil case is that the jury be "reasonably satisfied from the evidence." Otherwise the charge is not faulty in setting forth the legal principles sought to be enunciated.

■ A judgment will not be reversed or affirmed because of the giving or refusal of

belief charges. Sovereign Camp, W. O. W. v. Sirten, 234 Ala. 421, 175 So. 539; Pan American Petroleum Co. v. Byars, 228 Ala. 372, 153 So. 616; New York Times Co. v. Sullivan, 273 Ala. 656, 144 So.2d 25, rev. on other grounds, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686.

Assignment of error 16 will therefore not cause a reversal of this judgment.

Assignments of error 22, 24, 25, and 26 assert error respectively because of the court's refusal of defendant's respectively requested charges 5, 11, 12, and 13.

The predicate of each of these charges instructs the jury that if the jury "find." These charges were refused without error in that the predicate for a jury's determination in a civil suit is that the jury be "reasonably satisfied from the evidence." A court cannot be reversed for its refusal of charges which are not expressed in the exact and appropriate terms of the law. W. P. Brown and Sons Lbr. Co. v. Rattray, 238 Ala. 406, 192 So. 851, 129 A.L.R. 526; New York Times Co. v. Sullivan, supra.

Assignment of error No. 38 asserts as error the refusal of defendant's requested written charge No. 29.

This charge instructs the jury as to the award of damages to the defendant in the event the jury should find for the defendant under its pleas of recoupment, or either of said pleas.

The court's oral instructions covered the principles sought to be enunciated in refused charge No. 29 as substantially as does the charge. No error therefore resulted in the refusal of said charge.

We have considered all assignments of error presented, and conclude that this judgment is due to be affirmed.

Affirmed.

LAWSON, MERRILL, MADDOX and McCALL, JJ., concur.